IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MYLES SPIRES

Plaintiff

v * Civil Action No. RDB-10-1597

LIEUTENANT HARBAUGH, et al.
Defendants

***

## MEMORANDUM OPINION

Pending in the above-captioned case is Defendants' Motion to Dismiss or for Summary Judgment. ECF No. 21. Plaintiff opposes the motion. ECF No. 24. Also pending are Plaintiff's Motions for Default Judgment which shall be construed as supplements to his Response in Opposition to the Motion to Dismiss or for Summary Judgment. ECF No. 20 and 25. In addition, Plaintiff seeks appointment of counsel. ECF No. 3.

### Appointment of Counsel

A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1),[1] is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *see also, Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982). The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984). Where a colorable claim exists but the litigant has no capacity to present it, counsel should be appointed. *Id.*

Upon careful consideration of the motions and previous filings by Plaintiff, the Court finds that he has demonstrated the wherewithal to either articulate the legal and factual basis of

---

[1] Under § 1915(e)(1), a court of the United States may request an attorney to represent any person unable to afford counsel.

his claims himself or secure meaningful assistance in doing so. The issues pending before the Court are not unduly complicated. Therefore, there are no exceptional circumstances that would warrant the appointment of an attorney to represent Plaintiff under §1915(e)(1).

## Background

Plaintiff, an inmate confined to North Branch Correctional Institution (NBCI), claims that on September 24, 2009, he was "excessively maced and assaulted." ECF No. 1 at p. 4. He states the officers slammed his face down on the toilet in his cell, breaking off the bottom half of his two front teeth. He further claims that his teeth were never repaired to their former condition. He seeks damages in the amount of one million dollars and an order requiring the repair of his teeth.

Defendants state that on September 24, 2009, inmates on B Wing of NBCI flooded their cells, requiring the water supply to be shut down on the tier. Officers Troy Parson, Bruce Crowe and Sean Welsh were shutting down the water when they approached cells near 1-B-57, where Plaintiff was housed, and an unidentified liquid believed to be urine was thrown on them. ECF No. 21 at Ex. 1, pp. 7, 10—11.

As a result of the assault on the officers, Lt. Harbaugh, the housing unit manager, spoke with the inmates assigned to the two cells in question and asked all four men if they would exit their cells voluntarily so that a search could be performed. Plaintiff and his cellmate would not agree to comply with the order to exit the cell and stated they did not care what Harbaugh did. ECF No. 21 at Ex. 1, pp. 10—11 and 28. Thus Defendant Harbaugh decided to remove Plaintiff and his cell mate, Tremayne Lewis, from the cell using force if necessary so that a search for weapons could be conducted. A "use of force" team consisting of eight officers, four for each inmate, was assembled. The process of extracting Plaintiff and his cellmate from the cell was

2

videotaped. Plaintiff and Lewis were provided another opportunity to comply with orders to exit the cell voluntarily, but both men refused. In light of their failure to comply with orders, their actions in blocking the feed-up slot with a mattress, and reports that they were setting up other obstacles inside the cell, Harbaugh ordered the disbursement of pepper spray into the cell in an attempt to quell the recalcitrant behavior. A short period of time was allowed to elapse so that the pepper spray could take effect. The officers, who were already assembled for the cell extraction, then entered the cell to restrain the men and escort them out of the cell. Plaintiff and Lewis were escorted to holding cells where they were strip searched and taken to the medical unit for evaluation for pepper spray exposure. Each man was permitted to shower.

Defendants have provided the Court with a copy of the video. ECF No. 21 at Ex. 2. The video does not show what occurred inside the cell but it is clear there was very little space in the cell with the addition of eight officers. Although the still pictures taken of Plaintiff do not show his teeth, the video images show his front teeth which look to be damaged as he describes in the Complaint. ECF No. 21 at Ex. 4. Defendants allege Plaintiff's teeth were not damaged and point to the lack of any medical records indicating that his teeth were broken or chipped as proof that he was not harmed. *Id.* They state that Plaintiff offered no complaints at the time he was evaluated by the nurse other than requesting a shower and that the only dental issue noted in his records was a complaint he filed eight months later regarding pain in his jaw associated with a tooth extraction. *Id.* at 70.

Plaintiff refutes Defendants assertions with copies of sick call slips he submitted requesting attention for his broken teeth that are marked as received by dental staff. ECF No. 25 at Ex. B. Additionally, Plaintiff presents a letter dated August 18, 2010, addressed to him from Commissioner Stouffer. The letter indicates that Plaintiff contacted the Governor regarding his

3

dental care and his claim was investigated. The investigation revealed that Plaintiff's teeth were not damaged, did not need additional attention, and that his records revealed no history of sick calls, complaints or ARPs regarding the allegation that his damaged teeth were never repaired. *Id.* at Ex. C, p. 8. Indeed, Plaintiff's own evidence suggests the issue was addressed. In a dental sick call slip dated October 11, 2009, three weeks after the incident, Plaintiff states "I don't know what it's called but one of the white things ya'll put on the bottom of my broken teeth came off. Can you replace it please? Thank you." ECF No. 25 at Ex. B, p. 7.

**Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(c) which provides that:

> [Summary judgment] should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility."

4

*Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

### Exhaustion of Administrative Remedies

In their dispositive motion Defendants assert the complaint must be dismissed in its entirety because Plaintiff has failed to exhaust available administrative remedies. The PLRA provides, in pertinent part:

> (a) Applicability of administrative remedies
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e.

As a prisoner, Plaintiff is subject to the strict requirements of the exhaustion provisions. It is of no consequence that Plaintiff is aggrieved by a single occurrence, as opposed to a general conditions of confinement claim. *See Porter v. Nussle*, 534 U.S. 516, 528 (2002) (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). A claim which has not been exhausted may not be considered by this Court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007).

Administrative remedies must, however, be available to the prisoner and this court is "obligated to ensure that any defects in administrative exhaustion were not procured from the

5

action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir.2007). The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir.2007); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir.2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir.2006).

*Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008).

Thus, Plaintiff's claims must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that Defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D.Md.2003). The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 582 F.Supp.2d at 530; *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D.Md.1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir.2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286

F.3d 1022, 1024 (7th Cir.2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Plaintiff submits an ARP written regarding the incident, but there is no indication whether it was actually filed. ECF No. 25 at Ex. C. Plaintiff filed a claim with the State Treasurer under the Maryland Tort Claims Act, which was denied on March 3, 2010. ECF No. 25 at Ex. C, p. 6. In addition Plaintiff contacted the Governor about the incident. Corresponding with the Governor and the State Treasurer are not a part of the administrative remedy procedure. Exhaustion is not accomplished where, as here, the administrative steps in place for internal administrative grievances are not followed. It is not enough that Plaintiff chose to contact someone regarding his complaint, he must use the procedures in place for administrative remedies to satisfy the exhaustion requirement. Defendants, having properly raised the exhaustion defense, are entitled to summary judgment in their favor in light of Plaintiff's failure to establish a good faith effort to comply with the administrative remedy procedure.

The claim regarding a denial of dental care is not subject to the administrative remedy procedure, however, Plaintiff did not name dental staff as Defendants and it appears from Plaintiff's own evidence that he has received dental care for the damage to his teeth.

A separate Order follows.

January 24, 2011
Date

RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE